**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 05 2018

JAMES W. McCORMACK, CLERK
By:_____
                    DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

**C & S AGRI CONSTRUCTION,**                                    **PLAINTIFF**
**LLC and CHRIS PECK**

VS.                              Case No. 4:18-cv-15 - BRW

**WHOLESALE ELECTRIC SUPPLY**                                   **DEFENDANT**
**COMPANY, INC.**

## COMPLAINT AND PETITION FOR PRELIMINARY INJUNCTION

Comes now the Plaintiffs, C & S Agri Construction, LLC (hereinafter, "C & S") and Christopher Peck (hereinafter, "Mr. Peck") (hereinafter, collectively referred to as "Plaintiffs"), by and through counsel Jack Nelson & Jones, P.A. and Steve Jones, and for its Complaint against the Defendant, Wholesale Electric Supply Company, Inc. (hereinafter, "Defendant") states:

### PARTIES, JURISDICTION & VENUE

1. Plaintiff, C & S is a limited liability company organized under the laws of the State of Arkansas, authorized to and conducting business in the State of Arkansas. Plaintiff's registered agent for service of process is Chris Peck, 312 Wishbone Farm Road, Jefferson, Jefferson County, Arkansas 72079.

2. Plaintiff, Mr. Peck is an individual and a resident of Jefferson, Jefferson County, Arkansas.

3. Defendant is a foreign for profit corporation, incorporated under the laws of the State of Texas, and authorized to and conducting business in the State of Arkansas. Defendant's registered agent for service of process in Arkansas is the Corporation Company, 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201.

This case assigned to District Judge __Wilson__
and to Magistrate Judge __Ray__

4. There is complete diversity among the parties and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. Thus, subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332.

5. The events or omissions giving rise to Plaintiffs' claims occurred in the Eastern District of Arkansas, thus venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

6. C & S is a contractor providing, among other things, electrical service and installation to poultry barns. Mr. Peck is an incorporator and officer of C & S.

7. Defendant furnishes electrical material and supplies for use in a wide range of projects in Arkansas, among other states.

8. On or about December 2014, C & S applied for and received an account with Defendant in which Defendant extended credit to C & S (the "Account"). Mr. Peck personally guaranteed the Account.

9. C & S often made to Defendant informal, non-written, and/or verbal order requests for electrical supplies and/or material on the Account. Orders on the Account were broken down into specific accounts associated with individual projects on which C & S contracted for its electrical services ("Project Accounts").

10. C & S's main contacts for ordering goods from Defendant were Defendant employees Casey Shope and Lonnie Ward. Upon information and belief, Casey Shope or Lonnie Ward, on behalf of Defendant, caused all invoices billed to C & S to be created.

11. In mid to late 2016, Mr. Peck noticed Defendant was overbilling C & S for electrical supplies and/or perceived discrepancies in the amount C & S was billed by Defendant compared to goods C & S actually received from Defendant. At that time, Mr. Peck also noticed invoices for electrical supplies or material that were either unsigned or contained forged

signatures. Mr. Peck met with representatives from Defendant on several occasions regarding these concerns.

12. As a result of these meetings, it was discovered that Defendant double shipped (and thus double billed on) electrical supplies and/or material. Defendant subsequently retrieved the double-shipped goods and alleged it credited C & S's Account for the retrieved material.

13. On or about September 30, 2016, Mr. Peck endorsed a promissory note, individually and on behalf of C & S, in the amount of $45,000.00 (hereinafter, the "Note"), evidencing the amount that Defendant alleged C & S was still owing on its Account.

14. As a result of the above events, on or about September 2016, Defendant and Plaintiffs agreed that all orders made by C & S from Defendant were required to be authorized by the signature of Mr. Peck, Patrick Seale, Eric Nunnary, or Eugene Maples (hereinafter, referred to collectively as the "Authorized Signatures") (the "Signature Agreement").

15. Subsequent to the Signature Agreement, Mr. Peck complained on multiple occasions to, among others, Casey Shope, Lonnie Ward, and Defendant employee Homer Wilson that: Defendant charged C & S's Account for the delivery of goods evidenced by invoices that were unsigned or contained forged signatures, or, in any event, were not endorsed pursuant to the Signature Agreement; Defendant or agents of Defendant delivered goods to incorrect addresses; Defendant double-shipped goods; and Defendant charged C & S for undelivered goods.

16. In particular, on or about May 2017, Mr. Peck conversed with Lonnie Ward concerning the continued overbilling of C & S, orders delivered to incorrect addresses, and invoices without signatures or containing forged signatures. Further, Mr. Peck expressed concern to Homer Wilson in early August 2017 regarding Defendant refusing to have invoices signed by one of the Authorized Signatures.

17. On or about August 2, 2017, Defendant transmitted C & S's running account total on the Account to Mr. Peck evidencing all unpaid invoices on all of C & S's individual Project Accounts which Defendant alleged C & S owed. Mr. Peck realized the amount Defendant alleged C & S owed was inconsistent with the electrical supplies and/or material C & S utilized during the period following the Signature Agreement.

18. Plaintiffs discovered the invoices for goods Defendant alleged were delivered and which were charged to C & S's Account were unsigned for or contained forged signatures, or, in any event, did not comply with the Signature Agreement.

19. Defendant alleges C & S owes Defendant for the goods evidenced by each invoice, regardless of whether Defendant obtained a signature on the invoice, and has charged C & S's Account to that extent. Upon information and belief, the unsigned invoices total in excess of $860,000.00.

20. Defendant claims C & S still owes Defendant in excess of $250,000.00 on the Account.

21. Upon information and belief, Defendant has overcharged C & S by an amount significantly in excess of the amount Defendant claims is owed by C & S.

22. Defendant gave notice to Plaintiffs on November 3, 2017 that the balance due and owing on the Note was due to Defendant. On November 28, 2017, Defendant sent Plaintiffs a notice of acceleration on the Note, demanding payment of the balance.

23. Defendant has caused multiple materialman's liens to be placed on properties on which C & S contracted to provide electrical installation services for C & S's alleged failure to compensate Defendant on the outstanding Project Accounts.

24. Due to the multiple materialman's liens, C & S and DJA Poultry, which has served as prime contractor on projects on which C & S subcontracted, are alleged to be obligated on the debt Defendant claims C & S owes on its Account. Due to these liens, C & S and DJA Poultry are over-leveraged and unable to obtain funds or credit to initiate new construction projects.

25. Prior to the multiple materialman's liens, C & S had revenue of approximately $200,000.00 per month; subsequent to Defendant's materialman's lien, C & S has no new revenue and is merely finishing completion of existing contracts.

26. Prior to the multiple materialman's liens, C & S had a value in excess of $500,000.00; after Defendant placed the materialman's lien on Hidden Hills Farms, C & S has lost all value.

## CLAIM I: DECLARATORY JUDGMENT

27. Paragraphs 1-26 are incorporated herein by reference as if set forth below word for word.

28. Defendant and C & S agreed that goods delivered to C & S from Defendant required the endorsement of one of the Authorized Signatures pursuant to the Signature Agreement.

29. Invoices evidencing in excess of $860,000.00 of Defendant's goods allegedly ordered and delivered to Defendant are unsigned. Invoices evidencing in excess of $30,000.00 of Defendant's goods allegedly ordered and delivered to Defendant contain forged signatures.

30. Defendant charged C & S's Account for each of these unauthorized invoices during the relevant period.

31.     Of the total amount of unauthorized invoices totaling in excess of $890,000.00, Defendant contends that C & S still owes to Defendant in excess of $250,000.00.

32.     The $250,000.00 claimed by Defendant to be owed by C & S is in excess of the electrical goods and materials actually received and used by C & S to complete the poultry barns on which C & S subcontracted during the relevant period.

33.     Accordingly, Plaintiff is not indebted to or owing to Defendant in any amount. Pursuant to Ark. Code Ann. § 18-44-118(g) and Ark. Code Ann. § 16-111-101 *et seq.,* this Court may grant the declaratory relief Plaintiffs seek.

## CLAIM II: BREACH OF CONTRACT

34.     Paragraphs 1-33 are incorporated herein by reference as if set forth below word for word.

35.     As set forth heretofore, C & S maintained the Account with Defendant from on or about late 2014, whereby Defendant delivered ordered goods and materials to C & S on credit, and subsequently invoiced C & S for the cost of those goods.

36.     Subsequently, C & S and Defendant agreed that delivery of goods made pursuant to the Account agreement required the signatures of one of the Authorized Signatures, as set forth heretofore.

37.     Defendant alleges it delivered to C & S in excess of $860,000.00 of Defendant's goods, which are evidenced by invoices completely lacking signatures. Defendant alleges it delivered to C & S in excess of $30,000.00 of Defendant's goods, which are evidenced by invoices containing forged signatures or otherwise were not endorsed by the Authorized Signatures.

38. At all times prior to Defendant's wrongdoing alleged herein, C & S paid the amounts owing on its Account with Defendant pursuant to the parties' agreement and custom.

39. Defendant breached its agreement with C & S, including the Signature Agreement, by failing to obtain signatures on the invoices of Chris Peck, Patrick Seale, Eric Nunnary, or Eugene Maples.

40. Due to Defendant's breach: C & S has paid or is in debt or owing to Defendant in an amount in excess of $890,000.00 of unauthorized charges; Mr. Peck is in debt or owing to Defendant as the personal guarantee on the Account; C & S's revenue decreased from approximately $200,000.00 per month to zero; and C & S's business value decreased from in excess of $500,000.00 to being devoid of value.

## CLAIM III: FRAUD

41. Paragraphs 1-40 are incorporated herein by reference as if set forth below word for word.

42. Pursuant to the agreements and custom of Defendant and C & S, including the Signature Agreement and the Account agreement or custom, C & S and Defendant agreed that order deliveries made by Defendant and to C & S required the signature of one of the Authorized Signatures.

43. Defendant represented to C & S that deliveries of Defendant's goods were in fact delivered to Defendant and charged C & S's account for these delivered goods in an amount in excess of $890,000.00.

44. Defendant either knew this representation was false or had insufficient evidence upon which to make this representation to C & S.

45. Charges exceeding $860,000.00 billed to C & S were evidenced by unsigned invoices. Charges exceeding $30,000.00 billed to C & S were evidenced by unauthorized signatures.

46. Defendant produced no witnesses to C & S to corroborate Defendant's delivery of goods to C & S evidenced by the unsigned or unauthorized invoices, despite continual complaints by Mr. Peck to Defendant's agents that invoices were not being signed, were being forged, or were otherwise not endorsed by an Authorized Signature.

47. On information and belief, Defendant, on multiple occasions preceding this lawsuit, mis-delivered, created duplicate orders, and billed C & S for undelivered orders.

48. Further, on information and belief, Defendant invoiced C & S for electrical supplies and/or material that was not or could not have been delivered.

49. Defendant intended to induce C & S's reliance on the false representation that Defendant's goods were delivered and that C & S owed to Defendant in excess of $890,000.00 evidenced by unauthorized invoices.

50. Defendant charged C & S's Account the amount evidenced by unsigned and unauthorized invoices.

51. Notwithstanding multiple complaints to Defendant, Defendant continued charging C & S based on unsigned and unauthorized invoices.

52. Defendant claims C & S owes Defendant for each unsigned and unauthorized invoice and has placed the burden on C & S to prove Defendant's goods evidenced by the unsigned or unauthorized invoices were not delivered to C & S.

53. C & S's reliance on Defendant's representation to C & S was justifiable.

54. C & S is a small business which maintained an informal method of ordering from Defendant, often giving verbal orders to Defendant. Defendant is a corporation which, upon information and belief, has computerized programs to create orders, create invoices, charge clients, and manage inventory. Defendant is in a superior position to know what is ordered by C & S and what is and/or should be charged to C & S. It is thus reasonable and justifiable for C & S to rely on Defendant's superior position and record-keeping abilities.

55. Due to Defendant's fraud: C & S has paid or is in debt or owing to Defendant in an amount in excess of $890,000.00 of unauthorized charges; Mr. Peck is in debt or owing to Defendant as the personal guarantee on the Account; C & S's revenue decreased from approximately $200,000.00 per month to zero; and C & S's business value decreased from in excess of $500,000.00 to being devoid of value.

## CLAIM IV: TORTIOUS INTERFERENCE WITH A BUSINESS EXPECTANCY

56. Paragraphs 1-55 are incorporated herein by reference as if set forth below word for word.

57. During the period preceding the Defendant's multiple wrongfully-filed materialman's lien, C & S initiated or obtained economic relationships with, among others, DJA Poultry, businesses requiring C & S's services, and others in the industry. C & S maintained these valid, economic relationships and from these relationships, and others, had justifiable economic expectations in maintaining and/or increasing both its monthly revenue of approximately $200,000.00 and its business valuation, which was in excess of $500,000.00.

58. C & S has contracted for materials with Defendant since late 2014, and Defendant was and is aware of C & S's valid, business expectancies and justifiable economic expectations.

59. Defendant, as set forth above, has wrongfully and fraudulently invoiced and charged C & S for electrical supplies and/or materials which are evidenced by unsigned or unauthorized invoices, in violation of the Account requirements and the Signature Agreement. Notwithstanding Defendant's wrongful actions, Defendant alleges C & S owes Defendant in excess of $250,000.00. Defendant refuses to credit C & S's Account for Defendant's goods which Defendant cannot prove it delivered to C & S. Rather, Defendant has wrongfully placed the burden on C & S to prove the unsigned or unauthorized goods were not delivered to C & S.

60. Moreover, in an attempt to force C & S to compensate Defendant for the above-referenced disputed Account balance, Defendant caused multiple materialman's liens to be filed on projects on which C & S subcontracted its electrical installation services.

61. The debt which Defendant has wrongfully charged to C & S's account and the placement of the multiple materialman's liens on C & S's projects has interfered with C & S's valid economic relationships and justifiable economic expectations.

62. As a result of above-referenced conduct of Defendant, C & S's relationship with DJA Poultry is harmed; C & S's economic relationships with farm proprietors and/or farming industry contractors has been harmed; C & S's justifiable expectation of revenues of approximately $200,000.00 per month have decreased to zero since the filing of the materialman's lien by Defendant; and C & S's business value, which was in excess of $500,000.00 has decreased to nothing since the filing of the materialman's lien by Defendant.

### CLAIM V: ARK. CODE ANN. § 18-44-101, *et seq.*

63. Paragraphs 1-62 are incorporated herein by reference as if set forth below word for word.

64. Defendant alleges C & S owes to Defendant in excess of $890,000.00 evidenced by unsigned or unauthorized invoices.

65. Defendant alleges that of that amount exceeding $890,000.00, C & S is still indebted or owing to Defendant in an amount in excess of $250,000.00.

66. Based on the amount Defendant claims C & S is still owing, Defendant has caused multiple materialman's liens to be filed and placed on properties on which C & S served as subcontractor, pursuant to Ark. Code Ann. § 18-44-101 *et seq*.

67. Pursuant to Ark. Code Ann. § 18-44-117(a), in obtaining the materialman's lien, Defendant was required to provide to the Clerk of the County in which the property sits, *inter alia*, "[a] just and true account of the demand due or owing to him or her after allowing all credits."

68. Ark. Code Ann. § 18-44-118(a)(2) and (f) give C & S the right to challenge the lien on the issue of, *inter alia*, "whether [t]he lien was filed in the form required by [Ark. Code Ann.] § 18-44-117."

69. Moreover, "an owner, mortgagee, or any other person with an interest in the property" may contest the materialman's lien by declaratory judgment proceedings under Ark. Code Ann. § 16-111-101 *et seq*. Ark. Code Ann. § 18-44-118(g). *See* Claim I.

70. In Arkansas, "[t]he burden is on the materialman to show that the materials for which he claims a lien were used in the improvements on which the lien is sought." *Ragsdell v. Gazaway Lumber Co.*, 11 Ark. App. 188, 189, 668 S.W.2d 60, 61 (1984) (citing *Eudora Lumber Co. v. Neal & Jones*, 263 Ark. 40, 562 S.W.2d 294 (1978)); *see also Del Mack Constr., Inc. v. Owens*, 82 Ark. App. 415, 419, 118 S.W.3d 581, 584 (2003).

71. It is prima facie evidence that materials for which a materialman claims a lien were used in the property's construction if the materials contracted for were delivered at or near the place of construction or at a place designated by the contracting party, the construction project was thereafter completed, and it was constructed of materials of the same description of those furnished. *Central Lbr. Co. v. Braddock Land & Granite Co.*, 84 Ark. 560, 563, 105 S.W. 583, 584 (1907).

72. However, Defendant's goods apparently used in C & S's projects are not evidenced by a signed invoice and no eyewitness has claimed certain goods were delivered to C & S by Defendant. *See Stone Mill & Lumber Co. v. Finsterwalder*, 249 Ark. 363, 366, 459 S.W.2d 117, 119 (1970).

73. Defendant has failed to offer any proof that the materials which it claims were delivered, which it charged to C & S's Account, and on which Defendant's multiple materialman's liens are founded were ever delivered to C & S at a construction site or a place otherwise designated by C & S.

74. Moreover, prior to filing the materialman's liens, Defendant wrongfully placed the burden on Plaintiffs to prove the contested material charges were, in fact, not delivered.

75. Therefore, Defendant has failed to comply with the requirements of Ark. Code Ann. § 18-44-117(a)(1)(A) by providing to the Clerk of the relevant County in Arkansas an account of the demand due or owing to it by C & S that Defendant knew was false or had or has reason to believe was not a just and true account.

76. Moreover, Defendant has wrongfully filed its materialman's liens. Materialman's liens do not attach until the materials supplied are actually used and incorporated into the improvement. *See Del Mack Constr., Inc.*, 82 Ark. App. 415, 419, 118 S.W.3d 581, 584 (2003).

Defendant cannot satisfy its prima facie burden showing that materials it alleges were used by C & S were ever delivered to C & S at a C & S project site or other place designated by C & S. *See id.*

77. Protecting and enforcing the rights of C & S, along with DJA Poultry, *see* Ark. Code Ann. § 18-44-125, requires the Court to find that the materialman's liens filed by Defendant based on the aforementioned unfounded, fraudulent debt Defendant alleges C & S owes are illegitimate and should be removed from the property.

### CLAIM VI: SATISFACTION OF PROMISSORY NOTE

78. Paragraphs 1-77 are incorporated herein by reference as if set forth below word for word.

79. On or about September 30, 2016, Mr. Peck endorsed the Note, as set forth heretofore, individually and on behalf of C & S, in the amount of $45,000.00, evidencing the amount that Defendant alleged C & S was still owing on its Account.

80. On or about November 3, 2017, Defendant gave notice to Plaintiffs that the balance due and owing on the Note was due to Defendant.

81. On or about November 28, 2017, Defendant sent Plaintiffs a notice of acceleration on the Note, demanding payment of the balance.

82. Defendant overbilled C & S in an amount over and above the balance of the Note.

83. Defendant has collected from Plaintiff an amount in excess of the satisfaction of the Note.

84. As such, any claim by Defendant that Plaintiffs are due and owning on the Note or any demand by Defendant of payment on the Note should be barred.

## **CLAIM VII: PRELIMINARY INJUNCTION**

85. Paragraphs 1-84 are incorporated herein by reference as if set forth below word for word.

86. Defendant alleges C & S owes to Defendant in excess of $890,000.00 evidenced by unsigned or unauthorized invoices for goods, of which Defendant alleges that C & S is still indebted or owing to Defendant in an amount in excess of $250,000.00.

87. Based on the amount Defendant alleged C & S was and/or is still owing on its Account, Defendant caused multiple materialman's liens to be filed and placed on properties on which C & S served as subcontractor, pursuant to Ark. Code Ann. § 18-44-101 *et seq*.

88. Due these materialman's liens, owners of the properties on which the liens are filed are withholding funds and C & S and DJA Poultry are unable to generate the revenue necessary to operate their businesses.

89. As a result, C & S's relationship with DJA Poultry has been harmed. If these materialman's liens stay on the property or if new materialman's liens are filed, DJA Poultry will either be unable to continue business or unable to continue its relationship with C & S as its subcontractor.

90. Prior to the filing of the materialman's liens by Defendant, C & S generated revenues of approximately $200,000.00 per month and had a business value in excess of $500,000.00. Subsequent to Defendant's conduct, C & S's new revenue has decreased to zero or near zero, and its business is valued at or near zero.

91. These wrongful materialman's liens have harmed and continue to harm C & S. C & S's business will be unable to recover, and thus suffer irreparable harm, if these illegitimate

materialman's liens remain on the property and/or if Defendant files additional materialman's liens.

92. The above-referenced unsigned and/or unauthorized invoices were not signed by the Authorized Signatures as required by the Signature Agreement. In excess of $860,000.00 worth of invoices were unsigned.

93. Defendant produced no evidence, by way of signed invoices or witnesses, that the goods evidenced by the invoices were delivered and/or used in the C & S projects. Rather, Defendant put the burden on C & S to show the disputed goods were not used in C & S's project.

94. Defendant has failed to comply with the requirements of Ark. Code Ann. § 18-44-117(a)(1)(A) by providing to the Clerk of the relevant County in Arkansas an account of the demand due or owing to it by C & S that Defendant knew was false or had or has reason to believe was not a just and true account.

95. Therefore, Defendant has failed to comply with the requirements of Ark. Code Ann. Ark. Code Ann. § 18-44-101 *et seq.*; has not and cannot satisfy its prima facie burden showing that materials it alleges were used by C & S were ever delivered to C & S at a C & S project site or other place designated by C & S; and has wrongfully filed its materialman's liens on C & S projects.

96. Accordingly, Plaintiff can demonstrate likelihood of success on the merits of its case, as the filed materialman's liens are based on an illegitimate debt and additional liens would be based on the same debt. Thus, the current and future materialman's liens are or will be wrongfully filed.

97. Therefore, pursuant to Ark. R. Civ. P. 65, Plaintiffs are entitled to a preliminary injunction ordering Defendant to remove the wrongfully-filed materialman's liens and enjoining

Defendant from filing or causing to be filed any additional materialman's liens based on the foregoing alleged debt.

**DEMAND FOR JURY TRIAL**

98. Plaintiffs demand a jury trial on all issues so triable.

WHEREFORE, the Plaintiffs, C & S Agri Construction, LLC and Chris Peck, pray that they have and recover judgment from and against Defendant, for compensatory and punitive damages in an amount in excess of the minimum amount for federal court diversity jurisdiction, that this Court enjoin Defendants to remove existing liens and prohibit further liens, for an award of reasonable attorneys' fees, for all other damages allowed by law, and for all other relief to which they may be entitled.

Respectfully submitted,

By: _____
Stephen W. Jones
Ark. Bar No. 78083
sjones@jacknelsonjones.com
Jack, Nelson, Jones, P.A.
One Cantrell Center
2800 Cantrell Road, Suite 500
Little Rock, AR 72202
Tel: (501) 707-5520
Fax: (501) 375-1027